**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| In re Subpoena to NATIONAL TELECOMMUNICATIONS AND INFORMATION ADMINISTRATION | ) ) ) ) | Misc. Action No.:  19-MC-0040 (RDM) |
| | ) | |
| CITYNET, LLC, on behalf of the United States of America, | ) ) ) | (*Related Case in the United States District Court of the Southern District of West Virginia:  Case No. 2:14-CV-15947*) |
| Plaintiff/Relator, | ) ) | |
| v. | ) ) | |
| FRONTIER WEST VIRGINIA INC., et al. | ) ) | |
| Defendants. | ) | |

**THE FRONTIER DEFENDANTS' REPLY BRIEF IN SUPPORT OF**
**MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND**
**OPPOSITION TO CROSS-MOTION TO QUASH**

Movants Frontier West Virginia Inc. ("Frontier"), Kenneth Arndt, Mark McKenzie, and Dana Waldo ("Frontier Defendants"), by and through undersigned counsel, and pursuant to Rule 45 of the Federal Rules of Civil Procedure and Local Rule of Civil Procedure 7.1(a)(7), respectfully file their reply brief in support of their motion to compel the National Telecommunications and Information Administration ("NTIA") to produce documents responsive to the Frontier Defendants' *subpoena duces tecum* (the "Subpoena")*.

**INTRODUCTION**

With the exception of a single document, NTIA refuses to search for or produce documents in response to the Subpoena.  This is not a tenable position.  The United States is the real party in interest in the underlying litigation and stands to recover millions of dollars if Citynet is successful.  Under such circumstances, NTIA cannot stymie discovery and refuse to produce documents based

on an unsupported claim of undue burden.  The arguments NTIA sets forth in its opposition show that it fundamentally misunderstands the underlying issues in the litigation, and refuses to acknowledge that its internal documents are relevant to essential elements of Citynet's claims. NTIA's declarant even appears unaware of the high level of the agency's involvement in administering and overseeing the BTOP grant in West Virginia.  If the Frontier Defendants are to face trial on claims that they defrauded NTIA, fundamental fairness dictates they be given the opportunity develop evidence regarding the agency's knowledge of the relevant facts.

## BACKGROUND

The Frontier Defendants described the relevant background and procedural history in their opening brief and at the April 24, 2019 hearing.  *See* ECF Nos. 1, 5.  There have been several noteworthy developments since the initial filing and subsequent hearing.

### A.    A Motion to Modify the Scheduling Order Is Currently Pending in the Southern District of West Virginia

On March 27, 2019, the U.S. District Court for the Southern District of West Virginia modified the scheduling order in the underlying litigation, *see* Case No. 2:14-CV-15947 ECF No. 164, such that discovery is now set to conclude on June 26, 2019 and trial is scheduled to begin on November 5, 2019.  However, Gale Given and Jimmy Gianato ("the State Defendants") filed a Second Motion to Modify the Scheduling Order on May 29, 2019.  The Frontier Defendants have joined that motion, which is currently pending.  Citynet does not oppose modifying discovery deadlines, but has opposed any change to the trial date.

The State Defendants moved to modify the scheduling order a second time because an interlocutory appeal with respect to those defendants is still pending before the U.S. Court of Appeals for the Fourth Circuit.  The litigation in the Southern District of West Virginia has been stayed with respect to the State Defendants until the Fourth Circuit rules on the interlocutory

appeal.  On June 6, 2019, the Fourth Circuit tentatively calendared the interlocutory appeal for oral argument during the September 18-20, 2019 session.  The State Defendants subsequently filed a motion to submit the case for decision without oral argument.  On June 17, 2019, the Fourth Circuit entered an order deferring consideration of the motion pending a review of the appeal on the merits and removed the case from the tentative calendar for oral argument.  In light of the current posture of the interlocutory appeal and the stay of litigation with respect to the State Defendants, the Frontier Defendants have argued that a modification of the scheduling order and a continuance of the trial date is appropriate and necessary.

### B.     The Parties Met and Conferred After the April 24, 2019 Hearing

Following the hearing in this matter on April 24, 2019, the parties met and conferred as directed by the Court.  Despite a good faith effort, the parties were unable to fully resolve the discovery dispute.  *See* Joint Status Report, ECF No. 6.  The parties reached agreement on a limited range of issues: (1) NTIA agreed to produce a certified copy of the November 29, 2010 letter from Assistant Secretary Strickling to James Martin of Citynet, referenced in Request No. 2 of the Subpoena; and (2) the Frontier Defendants agreed to no longer request the production of the July 2013 email referenced in Request No. 12 of the Subpoena because the Executive Office of the State of West Virginia ("EOWV") produced that email in response to another subpoena issued by the Frontier Defendants.  *Id*.

As described in a May 21, 2019 letter and accompanying declaration, *see* ECF No. 6, Exhibit 2, the Frontier Defendants further proposed to narrow the document requests in the Subpoena as follows: (1) limiting the requests to documents solely in the possession of NTIA or its agents; (2) excluding any responsive documents that NTIA has made publicly available on https://www2ntia.doc.gov/; and (3) excluding any documents protected by the attorney-client

3

privilege, the deliberative process privilege, or other applicable privileges, provided that NTIA produces a privilege log as required by Rule 45. *Id.* The Frontier Defendants agreed to this limitation in light of the production of documents by EOWV, which included documents from the State's Department of Homeland Security, the Office of Technology, and the Attorney General of West Virginia.

Following the submission of the Joint Status Report, on May 29, 2019, the Court denied NTIA's motion to transfer and ordered NTIA to file an opposition to the motion to compel. In its opposition filed on June 11, 2019, NTIA once again fails to provide any basis to resist the Subpoena issued by the Frontier Defendants.[1] Therefore, as more fully explained below, the Court should grant the Frontier Defendants' motion and compel NTIA to produce documents responsive to the Subpoena.

## ARGUMENT

## I.   THE SUBPOENA DOES NOT IMPOSE UNDUE BURDEN OR EXPENSE

### A.   The Department of Commerce's *Touhy* Regulations Are Not a Legal Test for Determining Whether the Subpoena Imposes an Undue Burden

In NTIA's February 12, 2019 objections to the Subpoena and its April 5, 2019 brief, it appeared to argue the Department of Commerce's *Touhy* regulations as an independent basis for refusing to produce documents. In its opposition to the motion to compel, NTIA recasts its reliance

---

[1] NTIA styles its pleading as both an opposition and a "Cross-Motion to Quash." *See* ECF No. 9-1 at 1. However, NTIA's motion to quash is not timely as required by Federal Rule of Civil Procedure 45(d)(3)(A), and should be denied as such. *See HT S.R.L. v. Velasco*, 125 F. Supp. 3d 211 (D.D.C. 2015) (holding that a motion to quash a subpoena filed 21 days after the date for compliance and 50 days after service of the subpoena was not timely); *Estate of Ungar v. Palestinian Authority*, 451 F. Supp. 2d 607 (S.D.N.Y. 2006) (stating that to be timely, a motion to quash a subpoena must be made prior to the return date of the subpoena); *United States ex rel. Pogue v. Diabetes Treatment Centers of America, Inc.*, 238 F. Supp. 2d 270 (D.D.C. 2002) (holding that a motion to quash subpoenas *duces tecum* made three months after the return date was not timely).

on the *Touhy* regulations by arguing that the regulations are the proper measure for determining whether the Subpoena imposes an undue burden on the agency.  Although the Court must consider potential costs imposed upon NTIA as part of the undue burden analysis under Rule 45, the agency is wrong to the extent it argues that the *Touhy* regulations comprise the legal test for analyzing undue burden.  The Frontier Defendants are aware of no authority for such an argument.

As the Frontier Defendants noted in their opening brief, "[a]n agency's *Touhy* regulations are relevant for internal housekeeping and determining who within the agency must decide how to respond to a federal court subpoena."  *Watts v. SEC*, 482 F.3d 501, 508-09 (D.C. Cir. 2007); *see also Yousuf v. Samantar*, 451 F.3d 248, 257 (D.C. Cir. 2006) (describing *Touhy* regulations as establishing "method[ ] by which . . . an agency would respond to a subpoena").  *Touhy* regulations do not confer a privilege or other basis for objecting to a subpoena.  *Id.* at 509; *see also In re Rail Freight Fuel Surcharge Antitrust Litig.*, Misc. No. 07-489 (PLF/JMF/AK), 2010 WL 11613859, at *2-3 (D.D.C. Sept. 9, 2010).  Rather, "the legal basis for any opposition to the subpoena must derive from an independent source of law such as a governmental privilege or the rules of evidence or procedure."  *Id.* (quoting 9 James Wm. Moore et al., *Moore's Federal Practice* § 45.05[1][b] (3d ed. 2006)).

In its opposition, NTIA no longer argues that the Department of Commerce's *Touhy* regulations confer it with discretion to choose whether to comply with the Subpoena.  Rather, NTIA states that the Court's undue burden analysis must be sensitive to the costs imposed upon third parties, which includes "the government's serious and legitimate concern that its employee resources not be commandeered into service by private litigants to the detriment of the smooth functioning of government operations."  *Watts*, 482 F.3d at 509 (*Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774, 779 (9th Cir. 1994)).  The Frontier Defendants do not dispute that the

Court must consider potential burdens on NTIA, but the agency then argues that the factors relevant to the undue burden analysis "are codified in the Department's Touhy regulations."[2]  ECF No. 9-1 at 7.  The D.C. Circuit made no such pronouncement in *Watts*.  To the contrary, the court held that "an agency's *Touhy* regulations do not relieve district courts of the responsibility to analyze privilege or undue burden assertions under Rule 45."  *Watts*, 482 F.3d at 508.

In seeking to frame the analysis using the *Touhy* regulations, NTIA also omits the important fact that the Federal Rules seek to "adequately protect *both*" the government's interest and "the *litigant's right to evidence*."  *Watts*, 482 F. 3d at 509 (emphasis provided); *see also Exxon Shipping*, 34 F.3d at 779 (recognizing "the fundamental principle that 'the public . . . has a right to every man's evidence'") and 780 ("we believe that federal district courts . . . can adequately protect both an individual's right to 'every man's evidence'" and the government's interest).

The Court's analysis of undue burden in this case is not tied to the Department of Commerce's *Touhy* regulations.  Rather, "[t]o determine whether a subpoena imposes an 'undue burden,' courts balance several factors, including '[the] relevance [of the materials sought], the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.'"  *Educ. Fin. Council v. Oberg*, No. 10-MC-0079 (JDB), 2010 WL 3719921, at *2–3 (D.D.C. Mar. 8, 2010) (quoting *Flatow v. The Islamic Republic of Iran*, 202 F.R.D. 35, 36 (D.D.C. 2001)) (omitting internal quotation marks).  "Also 'potentially relevant' to this analysis is 'whether the discovery is "unreasonably cumulative or duplicative"; whether the discovery sought is "obtainable from some

---

[2] Notably, the *Touhy* regulations do not list the factors cited by NTIA as a measure of undue burden.  Rather, the regulations cite those factors as the reason for the Department's internal housekeeping policy requiring authorization from the Department of Commerce's General Counsel before an employee may produce documents in response to a demand.  *See* 15 C.F.R. § 15.13.

other source that is more convenient, less burdensome, or less expensive"; and whether "the burden or expense of the proposed discovery outweighs its likely benefit."' *Id.* (quoting *Watts*, 482 F.3d at 509 (quoting Fed. R. Civ. P. 26(b))). These factors—not the *Touhy* regulations—are the proper basis for analyzing whether the Subpoena imposes an undue burden on NTIA.

### B.     The Document Requests Are Relevant to the Claims and Defenses in the Underlying Action

NTIA next argues that the requested documents are not relevant to the claims or defenses in the underlying litigation. The agency's arguments on this point belie a fundamental misunderstanding of the issues in the underlying litigation, including the rulings made by the district court in the Southern District of West Virginia.

Moreover, as addressed in the opening brief, the documents requested in the Subpoena are relevant to essential elements of a cause of action under the False Claims Act—materiality and scienter.[3] *See* ECF No. 1-1 at 8-12. In the context of a False Claims Act case, the government's knowledge of alleged noncompliance with the terms of a contract, grant, regulation, or other law can be relevant to both elements. Specifically, if the government pays a claim despite knowing about the alleged noncompliance, such evidence is probative of whether the noncompliance was material to the payment decision. Likewise, evidence of disclosure of material facts to the government is probative of whether a defendant submitted alleged false claims with the requisite intent.

---

[3] Contrary to NTIA's argument, the Frontier Defendants have never argued that *Escobar* gives rise to "a *per se* rule granting unbridled access" to government files. *See* ECF No. 9-1 at 9. But *Escobar* does make clear that the government's knowledge of alleged noncompliance can be relevant to a determination of materiality, as it is in this case. *See Universal Health Servs., Inc. v. United States ex rel. Escobar*, 136 S. Ct. 1989, 2002 (2016). As such, the government's knowledge is a proper subject of discovery. Additionally, in its arguments on materiality and *Escobar*, NTIA wholly ignores the element of scienter, to which the Frontier Defendants' document requests also relate.

1.    NTIA's analysis of EOWV's grant application and its decision to award a BTOP Grant is relevant to Citynet's fraudulent inducement theory of liability.

NTIA states that its "sole connection" to this matter is "NTIA's analysis of WVEO's application and a decision to make the award to WVEO."[4]  ECF No. 9-1 at 8.  This analysis is not relevant to any claim or defense, NTIA contends, because "it took place well before any of the alleged false claims and statements were made."  ECF No. 9-1 at 9.  NTIA repeats this argument in arguing that Request No. 1 in the Subpoena imposes an undue burden.  To the contrary, such documents are clearly relevant to Counts I and V of the Amended Complaint (and potentially the conspiracy claim in Count IX), in which Citynet alleges that NTIA was fraudulently induced to award the BTOP grant to EOWV.

In Counts I and V of the Amended Complaint, Citynet alleges false claims based on requests for "payment from funds restricted to an approved NTIA grant award for construction of a middle mile network," where Frontier had constructed "a non-approved Last-Mile project."  Am. Compl. ¶¶ 134, 162, ECF No. 1-2.  Specifically, Citynet alleges that Frontier did not build a middle mile network as represented in its BTOP grant application.  According to Citynet, EOWV represented in its application that Frontier would build fiber from the community anchor institutions back to Frontier's central offices, where other service providers would be able to interconnect.  *See* Am. Compl. ¶¶ 2, 4, 39-40, ECF No. 1-2.  Instead of building back to the central office, Citynet contends, Frontier built "tails" to the community anchor institutions "from the nearest Frontier hub or similar facility."  *Id.* ¶ 56; *see also id.* ¶¶ 4, 78, 83.  Citynet complains that this was last mile infrastructure, "essentially rendering the newly constructed facilities useless to

---

[4] As addressed further below, NTIA's description of its "sole connection" is incorrect.  Not only does NTIA wrongly minimize its level of involvement, but it seems to misunderstand the issues in making its claims of relevance.

competitors," and "thus defeating the open access conditions set forth in the grant award." *Id.* ¶¶ 4, 84. Citynet contends that Frontier was responsible for misrepresentations in EOWV's grant application and that Frontier simply built the project originally proposed in its own stimulus applications. *Id.* ¶¶ 2, 75.

As recognized by the district court in the Southern District of West Virginia, Citynet asserts a fraudulent inducement theory of liability—"that Frontier, by assisting in the WVEO grant application, made false statements that it would build a middle mile network and, instead, built a last mile network, and that those statements related to a claim for payment under the grant." ECF No. 1-3 at 83-84. "[T]he complaint specifically alleged that the WVEO grant application contained misrepresentations pertaining to the building of the middle mile network so that the funds would be awarded to the WVEO and Frontier as its sub-recipient." *Id.* at 83 n.17.

Under a fraudulent inducement theory, courts have found liability under the False Claims Act "for each claim submitted to the government under a contract, when the contract or extension of government benefit was obtained originally through false statements or fraudulent conduct." *Harrison v. Westinghouse Savannah River Co. ("Harrison I")*, 176 F.3d 776, 787 (4th Cir. 1999) (citing *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 542 (1943)). In other words, if the government is induced to award a contract by a defendant's false statement, then the defendant is liable under the False Claims Act for any resulting claims for payment. *See United States ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 376 (4th Cir. 2008).

Discovery related to the government's analysis of EOWV's grant application and its decision to award a BTOP grant to EOWV are highly relevant to Counts I and V. The requested documents are probative of whether NTIA was misled when it awarded the grant to EOWV, and if so, whether any misrepresentations were material to its decision.

Moreover, the magistrate judge in the Southern District of West Virginia recently entered an order compelling Frontier to produce records related to "the preparation and submission of [EOWV's] grant application."  *See* Order, Exhibit A.  The Frontier Defendants had objected to Citynet's discovery requests related to Counts I and V because the district court had dismissed those counts except for conduct that occurred before March 23, 2010.  Because the False Claims Act "attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment,'" *Harrison I*, 176 F.3d at 785 (quoting *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995)), the Frontier Defendants argued that the effect of the district court's ruling was to dismiss Counts I and V in their entirety.  It is undisputed that there were no claims for payment under the BTOP grant until after March 23, 2010.  Nevertheless, the magistrate judge ruled that he could not consider this argument in response to a motion to compel and that discovery related to Counts I and V must be produced.[5]  Accordingly, the documents requested in the Subpoena are relevant to the underlying claims and NTIA should be compelled to produce them.

2.    NTIA Challenges Requests for Documents that Are Relevant to the Claims and Defenses in Counts I and V

Numerous requests in the Subpoena seek documents relevant to Counts I and V, including Request Nos. 1-5 and 7-10.  NTIA appears to misconstrue the types of documents that are relevant to Citynet's fraudulent inducement claim.  The Frontier Defendants are seeking to obtain documents that show direction and approvals from NTIA regarding the design of the fiber routes

---

[5] NTIA argues that the magistrate judge in the Southern District of West Virginia limited discovery on Counts I and V to conduct that occurred before March 23, 2010.  While the magistrate judge recognized that claims under Counts I and V are limited to conduct that occurred before March 23, 2010, he did not rule that the discovery is similarly date limited.

built by Frontier and what NTIA knew about the design of the fiber routes. NTIA challenges the relevancy of several specific requests, but its arguments are not persuasive.

In Request No. 1, the Frontier Defendants sought documents relevant to NTIA's analysis of EOWV's grant application and its decision to award a grant. The relevancy of this discovery is addressed at length above.

With respect to Request No. 2, NTIA questions the relevancy of documents related to the November 29, 2010 letter from Assistant Secretary of Commerce Lawrence Strickling to James Martin of Citynet. NTIA also makes the facially incorrect claim that these documents are "largely untethered to the underlying Complaint because the Strickling letter does not address the build-out of the last-mile versus middle-mile of the network." ECF No. 9-1 at 11. NTIA's position betrays a lack of familiarity or understanding of the underlying litigation. The Strickling letter was sent in response to a formal protest filed by Citynet, in which Citynet argued that Frontier was not planning to build middle mile infrastructure as proposed in EOWV's grant application. Indeed, the protest communications and related media coverage were the basis for the district court's ruling dismissing Counts I and V under the public disclosure bar with respect to conduct after March 23, 2010. *See* ECF No. 1-3 at 57-59. In other words, the requested documents are highly relevant to Counts I and V.

In the November 29, 2010 letter, Strickling gives NTIA's official rebuttal to Citynet's claim "that the EOWV project will create no middle mile infrastructure." Strickling states that Citynet's assertion is not true and that "the project's interconnection points will create middle-mile availability over fiber." Strickling also states:

> [O]ur rules do not require that any minimum proportion of a project consist of middle-mile construction. While we recognize that a project deploying more traditional middle-mile infrastructure could bring its own benefits to West Virginia, NTIA's responsibility was

> to review the application as filed by EOWV against the program criteria as established by Congress and NTIA. As explained above, the EOWV project matched the goals of the program quite well in a number of ways, a conclusion that is in no way diminished by the fact that a different application emphasizing different program goals might also have merited an award.

The Strickling letter is a powerful defense in and of itself, but NTIA's internal documents related to the letter are relevant and material to understanding NTIA's knowledge and position regarding the type of network being built in West Virginia pursuant to the BTOP grant.

In Request Nos. 3 and 5, the Frontier Defendants seek documents probative of the government's knowledge of alleged noncompliance—specifically, documents related to NTIA's own analysis of EOWV's compliance with grant terms and conditions as well as documents related to the analysis by ASR Analytics. NTIA commissioned the study by ASR Analytics to evaluate the EOWV grant, which included site visits and analysis of the fiber design.[6]

**C.    The Document Requests Are Not Overbroad**

    **1.    The document requests are not unreasonably cumulative or obtainable from a more convenient source.**

Alongside its relevance objections, NTIA asserts that the document requests in the Subpoena are overbroad. *See* ECF No. 9-1 at 10-13. Seemingly ignoring the Frontier Defendants' proposal to limit the requests to documents solely in NTIA's possession, NTIA criticizes the Frontier Defendants for not narrowing the document requests based on the production of documents by EOWV. NTIA argues that the documents sought in the Subpoena are primarily or even entirely in the possession of Frontier and EOWV. In asserting this argument, NTIA ignores

---

[6] In addition, documents responsive to Request No. 5 are likely probative of NTIA's knowledge regarding Frontier's use of maintenance coil. In a November 26, 2013 email, a representative of ASR Analytics asked Frontier to provide information on the "[n]umber of slack loops and distance between each" in the BTOP-funded fiber.

the target of the Frontier Defendants' document requests—information regarding the government's knowledge of alleged noncompliance. While some of the documents produced by EOWV are probative of the government's knowledge, "the EOWV and OAG productions appear to contain only minimal documents regarding the State of West Virginia's application for a BTOP grant"; and "the documents produced by EOWV and OAG do not contain any of NTIA's internal documents, including but not limited to notes, e-mails, and memoranda." *See* ECF No. 6- 2 at ¶¶ 9, 10, 11. The requested documents cannot be obtained from any other source, and the discovery sought is necessarily not cumulative or duplicative of discovery sought or obtained from other sources, including EOWV. Without NTIA's documentation, Frontier is at a fundamental disadvantage to defend itself against accusations that it defrauded that very agency.

### 2.   NTIA attempts to minimize its role administering the BTOP grant.

Throughout its opposition, NTIA downplays its involvement in the administration, management, and oversight of the BTOP grant in a veiled effort to avoid compliance with the Subpoena. *See, e.g.*, ECF No. 9-1 at 8-9 ("NTIA's analysis does not touch upon or relate to any of the bases for the underlying *qui tam* because its analysis took place well before any of the alleged false claims and statements were made."); 13 ("NTIA relied upon WVEO as NTIA's source of information for NTIA's own administration of this grant award."); 14 ("withdrawals were not reviewed in advance by NTIA"). In reality, NTIA had significant involvement in administering the BTOP grant. NTIA is forced to concede its involvement in analyzing EOWV's grant application and deciding on the grant award. But NTIA was involved in grant administration in other ways too. For example, NTIA drove the process for formulating the mitigation plan referenced throughout the Amended Complaint. *See* ECF No. 1-2 ¶¶ 123-126, 190. Specifically: NTIA required, monitored, and made changes to the mitigation plan. The mitigation plan alone

necessitated far more involvement by NTIA than suggested in its opposition.   NTIA also participated in regular BTOP calls from August 2011 through November 2012.  Indeed, an NTIA official was the lead on most of the calls, which included establishing a meeting agenda.  Topics discussed during these calls included the mitigation plan, community anchor institutions, reporting schedules, performance reports, and ASR.  NTIA representatives even flew to West Virginia on more than one occasion for presentations, updates, and meetings.

NTIA claims "WVEO was the source of facts that NTIA relied upon in its administration of this grant and, hence, NTIA is not the likely source documentation regarding the BTOP award." ECF No. 9-1 at 13-14.  This claim is contradicted by NTIA's engagement with parties other than EOWV.  In any event, the fact that EOWV provided information to NTIA does not mean that NTIA does not possess responsive documents, particularly where the focus of the discovery is NTIA's knowledge of alleged noncompliance.

### D.      NTIA Fails to Show that Searching for the Requested Documents Would Impose an Undue Burden on the Agency

NTIA claims that searching for the documents requested in the Subpoena would impose substantial burdens on the agency.  *See* ECF No. 9-1 at 15-17.  Yet NTIA fails to meet its "heavy burden" of showing that the Subpoena imposes undue burden or expense.  *See Northrop Corp. v. McDonnell Douglas Corp.*, 751 F.2d 395, 403 (D.C. Cir. 1984).  NTIA claims that it would take at least 358 hours to complete the review and production of records, *see* ECF No. 9-1 at 16, but fails to describe how it reached this estimate, and thus fails to satisfy its burden.  A party opposing discovery "must make a specific demonstration of facts . . . as opposed to conclusory or speculative statements about . . . the harm which will be suffered" if the discovery is permitted.  *Alexander v. F.B.I.*, 186 F.R.D. 71, 75 (D.D.C. 1998) (discussing showing necessary to support a protective order).  "'A mere showing that discovery may involve inconvenience and expense' is insufficient."

*Garcia Ramirez v. U.S. Immigration & Customs Enf't*, No. CV 18-508 (RC), 2019 WL 1765589, at *1 (D.D.C. Apr. 22, 2019) (quoting *Campbell v. U.S. Dep't of Justice*, 231 F. Supp. 2d 1, 7 (D.D.C. 2002)).

As discussed above, the requested documents are highly relevant to the underlying litigation and narrowly tailored so as not to impose undue burden on NTIA.  NTIA claims that conducting such an "extensive search" would "divert from NTIA's mission"; however, NTIA is not mandated to use NTIA resources to conduct such a search.  As to NTIA's discussion of the difficulties in locating and identifying responsive information, counsel for the Frontier Defendants have repeatedly stated that they are willing to discuss the scope of the search, including search terms and custodians, but NTIA has never been willing to engage in this discussion.  Since NTIA has made no effort to explore limitations on the Subpoena, its arguments in opposition to the motion to compel are without merit.  *See Westinghouse Elec. Corp. v. City of Burlington, Vt.*, 351 F.2d 762, 766 (D.C. Cir. 1965) ("Appellants have expressed their willingness to accept some reasonable effort by the Government, that would be less than a page-by-page search.  The lower court, in these circumstances, should have sought some way to accommodate the interests of the defendants herein with the practical problems of searching the Government's voluminous files.  Nothing in the record suggests that the possibility of making a less than complete search was explored.").  NTIA's arguments regarding substantial burdens are without merit.

Moreover, the potential value of this case makes granting the requested discovery all the more reasonable.  Citynet is seeking more than $130 million in damages and civil penalties based on the amounts paid to Frontier under the BTOP grant.  As the real party in interest, the government stands to collect at least 70 percent of any judgment that Citynet might receive.  The inconvenience to NTIA must be balanced against not only the potential damages but the government's potential

recovery.  *See Northrop Corp.*, 751 F.2d at 407 (holding that "large sums of money at stake is relevant in determining the reasonableness of the subpoena").    Indeed, "[a] reasonable inconvenience must be borne to further the goals of discovery—the making available to litigants all relevant and available information."  *Id.*

## II.   <u>NTIA FAILS TO SUPPLY A PRIVILEGE LOG TO JUSTIFY ITS CLAIMS OF PRIVILEGE</u>

Despite NTIA's claims, the Frontier Defendants have never sought to access properly privileged materials from NTIA, nor did they cite *Escobar* to get access to privileged documents. But NTIA attempts to assert privilege over documents it has not even begun to identify or review. Neither the Frontier Defendants nor the Court can evaluate NTIA's privilege claims if the agency continues to avoid any meaningful review of its own documents and refuses to produce a privilege log that could facilitate such evaluation.

Moreover, it bears noting that agency documents are not shielded from disclosure simply because they reflect internal communications or notes.  NTIA appears to assert a reading of the deliberative process privilege that is much broader than the law permits.  "To withhold a document under the deliberative process privilege, an agency must demonstrate that the document at issue is both pre-decisional and deliberative.  'A document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made.  Material is deliberative if it 'reflects the give-and-take of the consultative process.'" *Colorado Wild Horse & Burro Coal., Inc. v. Kempthorne*, 571 F. Supp. 2d 71, 75 (D.D.C. 2008) (omitting citations and quotation marks).  NTIA has made no attempt to show that documents requested by the Frontier Defendants fall within the deliberative process privilege.

## CONCLUSION

For all of the above-stated reasons, the Frontier Defendants request that this Court enter an

Order compelling NTIA to produce documents in response to the Subpoena within fourteen (14)

days from the Court's Order.

Dated: June 18, 2019

Respectfully submitted,

FRONTIER WEST VIRGINIA INC., KENNETH
ARNDT, MARK MCKENZIE, and DANA WALDO

By counsel,

/s/    *Elizabeth A. Hutson*
Charles Wm. McIntyre (D.C. Bar No. 489302)
Elizabeth A. Hutson (DC Bar No. 1024845)
McGuireWoods LLP
2001 K Street, NW, Suite 400
Washington, DC 20006
(202) 857-1700
cmcintyre@mcguirewoods.com
ehutson@mcguirewoods.com

Jeremy S. Byrum (admitted pro hac vice)
McGuireWoods LLP
800 E. Canal Street
Richmond, VA 23229
(804) 775-4305
jbyrum@mcguirewoods.com

*Attorneys for Movants Frontier West Virginia Inc., Kenneth*
*Arndt, Mark McKenzie, and Dana Waldo*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of June, 2019, I sent a true copy of this filing to counsel of record listed below by e-mail and first class mail, postage pre-paid:

Benjamin L. Bailey
Rebecca L. Donnellan-Pomeroy
Bailey & Glasser LLP
209 Capitol Street
Charleston, WV 25301-1386

Nicholas S. Preservati
Spilman Thomas & Battle
P. O. Box 273
Charleston, WV 25321-0273

*Counsel for Citynet, LLC*

Gary E. Pullin
Stephen M. Fowler
Geoffrey A. Cullop
Christopher C. Ross
Pullin Fowler Flanagan Brown & Poe, PLLC
901 Quarrier Street
Charleston, WV 25301

*Counsel for Jimmy Gianato and Gale Given*

Jennifer M. Mankins
U.S. Attorneys' Office
P.O. Box 1713
Charleston, WV 26326-1713

Augustine Martin Ripa
U.S. Dept. Justice, Civil Division
Patrick Henry Bldg., Rm. 9209
601 D Street NW
Washington, DC 20004

*Counsel for the United States*

Russell W. Craig
U.S. Dept. of Commerce, Office of the General Counsel
1401 Constitution Avenue NW
Washington, D.C. 20230

Kathy Smith
NTIA, Office of the Chief Counsel
1401 Constitution Avenue NW
Washington, D.C. 20230

*Counsel for National Telecommunications and Information Administration*

/s/  *Elizabeth A. Hutson*
Elizabeth A. Hutson (DC Bar No. 1024845)
McGuireWoods LLP
2001 K Street, NW, Suite 400
Washington, DC 20006